**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 95-30238

(Summary Calendar)
_____

JERRY HANDY,

                              Plaintiff-Appellant,

versus

PRUDENTIAL INSURANCE CO. OF AMERICA
and THIOKOL CORP.,

                              Defendants-Appellees.

_____

Appeal from the United States District Court
For the Western District of Louisiana
(94 335)
_____

August 29, 1995

Before HIGGINBOTHAM, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Jerry Handy appeals the district court's affirmance of the decision of the administrator of his employer's ERISA plan, Prudential Insurance Co. ("Prudential"), to terminate and to decline to reinstate Handy's long-term disability benefits. We affirm.

**I**

_____

[*]        Local Rule 47.5.1 provides:  "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession."  Pursuant to that Rule, the Court has determined that this opinion should not be published.

When Handy was injured in an automobile accident, he was a participant in a benefit plan established by his employer, Thiokol Corp. ("Thiokol"), and administered by Prudential. Under the benefit plan's long-term disability provisions, Handy received long-term disability benefits through January 3, 1993, the date his attending physicians released him to return to work. Handy did not return to work and requested continuation of his long-term disability benefits.

The stipulated record includes several memoranda from Prudential's claim file concerning Handy. These memoranda describe the actions taken by Prudential to administer Handy's claim for long-term disability benefits. The record also includes several reports from various physicians concerning Handy's condition.

After his physicians released him to return to work, Handy consulted Dr. Thomas Johnson, who diagnosed "a general weakening of the supportive soft tissue structures" in Handy's lower back requiring additional treatment "to normalize the connective tissues, osseous structures of the spinal column, and remove the spinal nerve interference." Dr. Johnson's report, however, did not indicate whether Handy could perform his job or any other type of work and did not state specifically the nature of the "abnormal deviations" exhibited by an x-ray. Accordingly, a Prudential memorandum noted that it was "unclear as to what was exactly found on [the] x-ray" and concluded that it did "not appear th[at Handy's] condition [was] severe enough to keep [him] from performing his job as an Inspector."

-2-

Prudential then contacted Handy and verified that Thiokol had informed him that it had a position available for him that would accommodate his medical restrictions. The memorandum indicates that Handy told Prudential that he was "not interested" in the position Thiokol had made available. A few days later, Prudential contacted Thiokol to determine the specific nature of the available position. A Thiokol representative informed Prudential that Thiokol had a position available as of January 4, 1993, that "was similar to what [Handy] had done before but less physically demanding," and that "this would have been the job [Handy] would have returned to" because Handy was "still considered an Inspector."

The same day, Prudential contacted Handy's treating physicians for additional information.[1] The memorandum indicates that Dr. Prakasam placed a 50-pound lifting restriction on Handy, but that Handy "could perform the Thiokol position that [he] would be returning to." The memorandum also indicates that Dr. Taylor "was very enthusiastic about [the] new position," which "should be within Mr. Handy's limitations," and that Handy "could have returned to this position on 1/4/93."

A few days later, Prudential "obtained some additional information from Dr. Prakasam and Dr. Taylor which substantiates a disability for [Handy] through 1/3/93. At this time, these physicians agree that Mr. Handy could have returned to his occupation as an Inspector on 1/4/93 based on the position

---

[1] These were the physicians who had released Handy to return to work.

available to him."  This memorandum also indicated that Dr. Guice, a chiropractor whom Handy had consulted, wanted an additional week or more of treatment before releasing Handy, but that "Dr. Guice [had] no information regarding Handy's past medical history and could not provide any objective findings to warrant a continued disability."[2]

Based on this information, Prudential concluded that because Drs. Prakasam and Taylor had released Handy to return to work to a "job available to him which apparently now has less physical demands than before," Handy no longer qualified for long-term disability benefits.  Consequently, Prudential notified Handy that: "On January 4, 1993, you were released to return to an Inspector position at Thiokol Corporation.  Since this job accommodated your functional capabilities, LTD benefits are not payable beyond January 3, 1993."

After Prudential decided to terminate Handy's disability benefits, Handy sought additional medical advice from Dr. Cotter, who started treating Handy one month after Drs. Prakasam and Taylor had released Handy to return to work.  Dr. Cotter's report indicates that Handy could return to work without heavy lifting and could resume heavy duty in four to six weeks.  The report also indicates that Handy allegedly had returned to work but was "unsteady handling `shells' (explosives)."  Dr. Cotter recommended an orthopaedic evaluation and light-duty work.

---

[2]     Dr. Guise did not know that other physicians had been treating Handy for several months.

Prudential responded to Dr. Cotter's report by contacting Thiokol. Thiokol informed Prudential that Handy had not returned nor had he attempted to return to work, and that Handy did not work with explosives. Prudential then contacted Dr. Cotter, who stated that Handy had informed him that he had tried to return to work but that he could not "handle it." After Prudential informed Dr. Cotter that Handy had not returned to work and that a lighter status position was available, Dr. Cotter stated that he still recommended another orthopaedic evaluation and that "as long as heavy lifting [was] required [Handy] could not do his job." Dr. Cotter's report, however, contained no objective findings supporting his conclusion that Handy could not return to work for four to six weeks. After Prudential reviewed Dr. Cotter's advice, it declined to reinstate Handy's long-term disability benefits.[3]

Handy filed suit in state court to recover the long-term disability benefits that Prudential had denied. Pleading federal jurisdiction based on ERISA, Prudential and Thiokol removed the case to federal court. The parties consented to a bench trial upon a stipulated record, and they filed briefs on the merits. The district court made the factual findings reviewed above and

---

[3] Prudential notified Handy of its decision and stated that it reexamined "the medical and vocational information in file, including the Attending Physician's statement completed by Dr. Cotter dated February 24, 1993," but that "[a]lthough you may still have some subjective complaints of pain, there are no clinical findings to support that your condition has imposed restrictions or limitations that would have prolonged your recovery beyond January 3, 1993." Prudential also stated that: "In addition, the physicians that were treating you as of January 1993 both confirmed that you were physically capable of performing the duties of your job as of January 3, 1993. Based on this information we are reaffirming our decision to terminate your LTD benefits effective January 3, 1993."

concluded that Prudential had not abused its discretion in terminating Handy's long-term disability benefits or in declining to reinstate those benefits. Based on these conclusions, the district court dismissed Handy's suit with prejudice. Handy now appeals.

## II

Handy contends that the district court erred in concluding that Prudential had not abused its discretion in terminating his long-term disability benefits and in declining to reinstate those benefits. In reviewing a district court's decision concerning a plan administrator's determination of eligibility for benefits, we review questions of law de novo and we set aside factual determinations only if clearly erroneous. *Chevron Chem. Co. v. Oil, Chem. & Atomic Workers Local Union*, 47 F.3d 139, 142 (5th Cir. 1995). If, as is the case here, the plan gives the administrator discretion to determine eligibility or to interpret the terms of the plan, the district court should review the administrator's factual findings only for an abuse of discretion. *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 598 (5th Cir. 1994); *accord Chevron*, 47 F.3d at 142. We review de novo the district court's conclusion as to whether the administrator abused its discretion, and we review the district court's underlying factual findings for clear error. *Sweatman*, 39 F.3d at 601.[4] A plan administrator

---

[4] Because this case proceeded in the court below as a bench trial on a stipulated record without live testimony:

[T]he existence of factual questions will not undermine the result. Moreover, we will resolve all inferences from the record in favor of the district court's decision and will affirm unless the district

abuses its discretion if it acts arbitrarily or capriciously.  *Id.*

Handy first argues that Prudential acted arbitrarily and capriciously in deciding to terminate his benefits, contending that Prudential "acted on . . . non-medical conclusions" and failed to rely on all medical evidence, and that "specific information regarding [a] new, lighter duty position" was not available.  The record indicates that Prudential evaluated all the medical records relevant to Handy's condition prior to determining that he was no longer eligible for long-term disability benefits as of January 3, 1993.  The record also indicates that Prudential had reached this conclusion in reliance on information provided by Handy's treating physicians, Drs. Taylor and Prakasam, who had advised that Handy could return to work after January 3, 1993, if Thiokol gave him a "lighter duty job."  Further, the record confirms that Thiokol had a position available for Handy that accommodated his medical restrictions,[5] but that Handy was not interested.  We hold that the record supports the district court's decision that Prudential did not act arbitrarily or capriciously in terminating Handy's long-

---

court resolved fact questions in a clearly erroneous manner or misconstrued the law.

*John v. State of La.*, 757 F.2d 698, 703 (5th Cir. 1985).  However, "the appellant's burden of showing clear error in the district court's fact findings may be lightened somewhat where a record consists entirely of documentary or written evidence and the trial court could not have based findings on the credibility of witnesses giving oral testimony." *Vetter v. Frosch*, 599 F.2d 630, 632 (5th Cir. 1979).

[5]     Handy argues that Prudential memoranda indicate that Thiokol did not have a lighter-duty position available.  The memoranda on which Handy relies, however, date from late 1992.  Memoranda of January 1993 clearly indicate that after it had previously notified Prudential of the lack of a suitable position, Thiokol found a position that would accommodate Handy's condition and informed Prudential of this change.  Accordingly, the record does not support Handy's contention.

term disability benefits. Accordingly, the district court did not err in concluding that Prudential had not abused its discretion. *Sweatman*, 39 F.3d at 601.

Handy also contends that the district court erred in holding that Prudential had not abused its discretion in declining to reinstate his benefits, arguing that Prudential acted arbitrarily and capriciously when it failed to obtain the orthopaedic evaluation recommended by Dr. Cotter. Handy relies on *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1015 (5th Cir. 1992) to argue that this evaluation was required to obtain all necessary information to make a fully reasoned decision regarding the reinstatement of Handy's benefits.

*Salley* does not support Handy's position. In that case, the administrator failed to review records that were available. Because those records contained information necessary to a proper decision, this Court concluded that the administrator had abused its discretion in failing to review the records. *Salley*, 966 F.2d at 1015. Here, Prudential reviewed all the available records, and because it already had three orthopaedic evaluations, it concluded that a fourth would merely be cumulative. The district court held that Prudential had not abused its discretion in refusing to obtain the fourth evaluation. We agree. *See Sweatman*, 39 F.3d at 602-03 (distinguishing *Salley* because administrator had reviewed all available records and declined to rely on certain physicians' diagnosis because it relied on other physicians' conflicting opinions, and concluding that district court had not erred in

concluding that administrator had not abused its discretion). Accordingly, the district court did not err in holding that Prudential had not abused its discretion when it refused to reinstate Handy's long-term disability benefits.

### III

For the foregoing reasons, we AFFIRM the judgment of the district court.